# LYON *v.* SMITH.

### MORTGAGOR AND MORTGAGEE ; CONTRACTS.

1. Equity scrutinizes closely transactions between mortgagor and mortgagee, and where it appears that an undue advantage has been taken of the ignorance and necessities of a mortgagor, will relieve him, where possible, of a hard bargain made with him by the mortgagee.

2. Where in a transaction the minds of the parties have not met, no valid contract can exist with respect thereto, and equity will rescind and declare void an apparent contract made under such circumstances.

No. 142. Submitted November 22, 1893.—Decided December 4, 1893.

HEARING on an appeal by the defendant from a decree of the Supreme Court of the District of Columbia, holding an equity term, adjusting the rights of the parties, in a suit brought to procure the release of a deed of trust. *Reversed.*

The COURT in its opinion stated the case as follows :

The complainant, Clem. Smith, an ignorant colored man, able to write his name, but otherwise, it seems, illiterate, on May 14, 1889, borrowed $1,000 from the defendant Isaac S. Lyon, for which he gave his promissory note payable in five years from date, with interest at ten per centum per annum, payable quarterly, and to secure payment of the indebtedness he executed a deed of trust of lots 71 and 61, of Barry Farm, in the county of Washington, D. C., which belonged to him. On November 13, 1890, when the interest on the $1,000 note had been paid up in full, so far as it had accrued, and after the complainant had been negotiating for some time in vain to sell one of his lots so as to relieve himself to some extent from the burden of his indebtedness, he came to an understanding, as he supposed, with the defendant Lyon through the intervention of one J. H. Adriaans,

whereby Lyon was to purchase lot 71 for the sum of $750, give credit for that amount on the indebtedness of the complainant to him, release the deed of trust to secure the $1,000 and take a new deed of trust on lot 61 to secure the residue of the indebtedness, that is, the difference between the previous indebtedness and the proceeds of the sale of the lot, but also taking some other sums of money into consideration. The new deed of trust was executed; but it does not seem to have been read by or to the complainant, or in any manner explained to him.

Thus far there is not much, if any, discrepancy between the statements of the parties. But beyond this they differ radically. The complainant claims that he supposed he was signing a deed for the difference between $1,000 and $750; that he now finds that the deed purports to have been given to secure $800, payable in five years from date, with interest at ten per centum per annum; that Lyon, it seems, had calculated the interest on the $1,000 note for the $3\frac{1}{2}$ years which it had then to run, amounting to $350, and had added that to the amount of the indebtedness, making the sum total $1,350, and that he, the complainant, had not agreed to anything of the kind.

On the other hand, Lyon claims that he agreed to give $750 for the lot, which, in his opinion, was not worth more than $500, on condition that the $1,000 loan should be regarded as due, with interest charged upon it to the date of its maturity; and that otherwise he would not have entered into the transaction.

The testimony throws no very great amount of light upon the controversy. Much of it was devoted to the determination of the question which of the parties it was for whom Adriaans acted as agent, without elucidating the point to any great extent further than to show that that individual rather overreached both parties, by both of whom he is now sought to be discredited.

The court below decreed that a credit of $350 should be entered on the $800 note given by the complainant as of its

date (November 13, 1890); that the deed of trust should stand as security for $450, instead of $800; and that it should be released by the payment of the $450 with interest on or before January 1, 1893. From this decree Lyon appealed to the General Term of the court; and his appeal has now been transferred to us by the law.

*Mr. Isaac S. Lyon* for the appellant.

*Mr. M. Dorian* for the appellee.

Mr. Justice MORRIS delivered the opinion of the Court:

We have no doubt whatever that a most unconscionable advantage has been taken of the ignorance and the necessities of the complainant. The defendant Lyon himself admits that he made a hard bargain with him. It is a bargain which no court of equity will permit to stand, if it can find the means of avoiding it. The jealous scrutiny with which a court of equity will regard transactions between a mortgagor and a mortgagee could not have better opportunity for application than this case.

It is clear to us that the minds of the parties did not meet at all in the transaction which was consummated on November 13, 1890, and that, therefore, there was no valid contract between them. The testimony shows that the parties themselves never came together; that the transaction was managed by Adriaans; that Adriaans had been, and even for some time afterwards continued to be, the general agent of the defendant Lyon; and that, while it does appear that Lyon's proposition as communicated to Adriaans was such as he (Lyon) claims it to have been, it was never communicated to the complainant in that way, or at all events was not so understood by the complainant. And there is reason to believe that the complainant was wilfully misled in the matter by Adriaans. There being, therefore, no actual contract, the parties are entitled to have the apparent contract rescinded and declared void.

The decree of the court below seems to be based on the theory that there was an actual contract between the parties

to the effect as claimed by the complainant, and is in effect a reformation of the apparent contract to that extent. We do not find that the testimony supports this theory, but rather tends to show, as we have stated, that there was no mutual agreement between the parties to the transaction. It is true that, if we assume the sum of $750 to be the real as well as the nominal value of lot 71, the practical result of the decree of the court below would be the same as that to be deduced from our conclusion. But inasmuch as in the light of the testimony as it stands, we are not fully justified in assuming that value to be as stated, and as there are probably other matters to be taken into consideration, it seems most desirable and proper that the cause should proceed on the line which we have indicated.

We will, therefore, reverse the decree of the court below, and remand the cause to that court, with directions to decree a rescission of the contract of November 13, 1890, and to refer the cause to the auditor of the court for the statement of an account between the parties, upon the basis of such rescission.

We are not informed by the record before us whether the complainant's bill contains a prayer for general relief. If it does not, it should be amended so as to include such a prayer.                                        *Reversed.*