**HILL v. HAWES et al.**

No. 7844.

United States Court of Appeals
District of Columbia.

Argued March 20, 1944.

Decided June 30, 1944.

Mr. Henry Lincoln Johnson, Jr., of Washington, D. C., for appellant.

Mr. John B. Gunion, of Washington, D. C., for appellee Hawes.

Before GRONER, Chief Justice, and EDGERTON and ARNOLD, Associate Justices.

512

ARNOLD, Associate Justice.

This is a suit for the cancellation of a note and deed of trust on the ground that if payments of usurious interest are credited to the plaintiff the note has been fully paid. The complaint also asks for the return of usurious payments in excess of the amount of the note. After a trial by the court without a jury, judgment was given for the defendant, from which plaintiff appeals.

The evidence showed that in 1926 defendant Hawes advanced to the account of plaintiff's intestate, Bertha Byrd, and her husband the sum of $2,286.80. In return he received a note for $3,600 secured by a trust deed on real property owned by the Byrds. During the next three years interest was paid on the $3,600 note and in addition the principal was reduced to $2,116.95. Then, in 1929, defendant foreclosed the property under the trust deed, buying it in for $2,300. Immediately thereafter defendant sold back the property to Bertha Byrd for a new note of $3,000 secured by a trust deed on the same property. No new money was advanced to Bertha Byrd as a result of this transaction, which fictitiously increased the indebtedess by another 30%. Payments of principal and interest were made over the next ten years reducing the amount owing on the inflated basis to $914.77.

The net result of the whole series of transactions is the Byrds received $2,286.80. In addition to paying interest on a much larger sum they have repaid about $3,600 on account of principal. Yet in 1939 they still owed about 40% of what they originally received.

The defense is that the $2,286.80 was advanced by the defendant, not as a loan, but as the purchase price of a previously executed $3,600 note which he testified he bought in due course at a 40% discount from a man named Robinson. This note was signed by the Byrds and secured by a trust deed on the same property. Robinson was the payee. Defendant testifies that he did not know either the Byrds or Robinson but bought the note through a man named McKinley, who represented himself to be the agent of Robinson.

 We do not consider this evidence sufficient to show that the defendant was a holder in due course of the original note which he claims to have purchased. The circumstances surrounding the transaction constitute a badge of fraud which is not rebutted. Competent businessmen do not purchase notes in substantial sums executed by parties unknown to them whose credit they have not investigated. This circumstance, coupled with the fact that the defendant claims to have bought a note which was amply secured at the outrageous discount of about 40%, makes a prima facie showing of usury which must be explained before the purchaser can be found to be a holder in due course.[1] Victims of usury are usually ignorant people who have no access to reputable credit agencies. A common device to conceal usury is the pretended bona fide purchase of a note at a large discount. Transactions of this character out of the normal course of business must be viewed with suspicion by the court if any real protection is to be offered to the victims of usurious moneylenders.

In addition to this presumption the records of the only transaction in which money was actually advanced further rebut the inference that the defendant was a holder in due course. Before the defendant paid out any cash he insisted on a new note from the Byrds secured by a trust deed with friendly trustees. A reputable title company acted as a settlement agent for both parties in distributing the $2,286.80 which the defendant loaned. Its records show that the money was not paid to Robinson, as seller of the note, but instead distributed to the account of the Byrds and to Robinson as attorney. This evidence makes it impossible to support the finding of the trial court that the defendant was the owner in due course of a previous note from the Byrds.

We now come to the colorable foreclosure in 1929 by virtue of which the property was bought in by the defendant for the $2,116.95 still due on its inflated face value (plus expenses of sale), then reconveyed to Bertha Byrd for a still further inflated note and trust deed in the sum of $3,000. It is possible to find from the conflicting evidence on this point that Bertha Byrd arranged this transaction with the defendant in order to get the property in her own name and eliminate her husband's claim to title. At that time Mr. and Mrs. Byrd were separated and Mr. Byrd had disappeared.

[1] See Jobes v. Wilson, 1910, 140 Mo. App. 281, 124 S.W. 548, 551; Williams & Co., Inc., v. Wiltz, 1927, 106 Conn. 147, 137 A. 759; Linch v. Thorpe, 1941, 140 Neb. 478, 300 N.W. 383.

513

The trial court found that this testimony barred recovery by Mrs. Byrd under the doctrine of clean hands, because the court inferred that her purpose was wrongfully to eliminate her husband's interest.

■ We do not believe that the usury statute can be construed to permit a usurer to retain usurious payments on the ground that the victim has been guilty of inequitable or fraudulent conduct with respect to a third party. The language of the statute requires the forfeiture of all usurious payments without exception. The purpose of the statute is to penalize and eliminate, as far as possible, a widespread evil. This purpose is not served by allowing usurers to retain their illegal collections simply because they show culpable conduct on the part of the victim.

■■ In addition, there is no evidence in this case that the purpose of Mrs. Byrd was to defraud her husband. The record shows that he had left her home and disappeared. Presumably he owed her the duty of support. It is not unlikely that a court would have set over this property to her had she sought such relief. The mere fact that a wife acquires property left by a husband who has deserted her does not by itself constitute proof that she has defrauded him, or that her conduct has been inequitable.

■ The statute of limitations does not bar the relief sought in this case. Under the usury statute recovery of usurious payments is limited to one year.[2] Under the general statute of limitations actions not otherwise limited must be brought within three years.[3] However, no statute puts any limitations on the claim of usury used as a defense in a suit based on the usurious obligation. A usurer cannot by delaying suit on a note acquire the right to collect the usurious payments forfeited by the statute. In substance, this suit may be regarded as one for a declaratory judgment that the plaintiff's intestate had a complete defense to her obligation on the note. A declaration that there is a complete defense to the note is not barred by the statute. After it has been made by the court, cancellation of the note and mortgage follows as a matter of course and does not require a separate action on equitable grounds. The one-year statute of limitations does, however, apply to the recovery of any payments made by plaintiff's intestate in excess of the amount necessary to extinguish the note.

■ The court below erred in holding that plaintiff could not recover because of the equitable doctrine of laches. The provision in the statute allowing the recovery of usurious payments made within one year before suit is brought, regardless of the date of the note, makes it illogical to allow the defense of laches to a suit to cancel the note. To refuse cancellation would merely result in circuity of action since the borrower would be entitled to recover any payments she might make on the obligation, even after the defense of laches had been allowed in the cancellation suit, by suing for them within one year after making them. A usurious obligation is unenforceable regardless of the time it has run.

The findings of the trial court will be set aside. All payments made by the plaintiff should be credited on the principal of the original debt of $2,286.80. Since the debt has long since been paid judgment should also be given to plaintiff for all payments made within one year of the filing of this suit.

Reversed and remanded.

[2] D.C.Code 1940, § 28—2704.

[3] D.C.Code 1940, § 12—201.