A. David RUBINSTEIN, Appellant,

v.

Abraham H. GOLDKIND and Helen Goldkind, Appellees.

No. 14036.

United States Court of Appeals District of Columbia Circuit.

Argued Jan. 21, 1958.

Decided March 20, 1958.

Mr. Herman Miller, Washington, D. C., for appellant.

U.S.C.A. § 1001(f) (2) and 5 U.S.C.A. § 1008(a) (1952).

24. Cf. Perkins v. Elg, 1939, 307 U.S. 325, 350, 59 S.Ct. 884, 83 L.Ed. 1320.

Mr. Mark P. Friedlander, Washington, D. C., for appellees.

Before WASHINGTON, DANAHER and BASTIAN, Circuit Judges.

PER CURIAM.

The complaint in this case was filed to substitute trustees under and to "reinstate" a deed of trust. As gleaned from the depositions and the pleadings below the following facts do not seem to be seriously in dispute:

In September 1954 the defendants Mr. and Mrs. Humble, owners of certain real estate in the District of Columbia,[1] borrowed $3,000 through the defendant Henry Berman, gave in return a note in that amount to the order of one Laifsky,[2] and executed a deed of trust to secure the same. The trustees named in the deed of trust were unaware that they had been so named; likewise Laifsky did not know that he had been named payee in the note. The note was purchased by appellant Rubinstein from Berman, who had endorsed Laifsky's name without Laifsky's knowledge. Rubinstein deposited the note with his bank for collection.

In advance of the full maturity of the note Berman, without Rubinstein's knowledge, accepted payment of the full balance due on the note and forged the names of the two trustees to a release of the trust. This release was dated January 19, 1955, and was recorded the following day. The amount received by Berman was never paid to Rubinstein, except that Berman himself made several payments on the note as payments became due, keeping for himself the remaining proceeds of the payment. The note was never surrendered and cancelled by Rubinstein or his collection agent after the balance due was paid to Berman.

On January 20, 1955 (the same day the forged release was recorded), the Humbles borrowed $5,000 from one Cook and executed to Cook a note in that amount secured by a deed of trust. This deed of trust was recorded on January 20. Shortly thereafter the Humbles defaulted, and the trustees of the last-mentioned deed of trust, after public notice, sold the property to appellees Mr. and Mrs. Goldkind. The trustees' deed was recorded on March 31, 1955. On July 20, 1955, the Goldkinds conveyed the property to one Foxx taking in return a note for $6,225.62 secured by a deed of trust appearing to be subsequent only to the first trust as, from the record, it appeared that the old second trust securing Rubinstein had been released. Foxx and the trustees under the January 20 and July 20 deeds of trust were named as defendants and answered the complaint. It does not appear from the record that Cook, also named as a defendant, was served with or answered the complaint.

The Goldkinds' answer claimed that Rubinstein did not have legal title to the $3,000 promissory note, and therefore that Rubinstein could not maintain this action. That note, they claimed, had been made payable to Laifsky, and Laifsky had neither endorsed nor delivered it to appellant, nor had Laifsky authorized the endorsement. The Goldkinds claimed that they were approached to purchase a second trust note secured by the property involved, and that the record title then showed that the property was subject only to a first trust, the old second trust (under which appellant claims) having been released by a deed of release duly acknowledged and recorded. As noted above, the Humbles subsequently abandoned the property and, although named as parties, have neither been served nor appeared in this action.

After taking depositions, the Goldkinds moved for summary judgment on the ground that the depositions conclu-

---

1. There was a first deed of trust on the property which is superior in estate to either of the trusts hereinafter referred to, and which is not involved in these proceedings.

2. Referred to variously as Laifsky, Lafsky, and Laefsky.

sively showed that the Laifsky note had not been properly transferred to Rubinstein and further that, if Laifsky were a "straw party," Rubinstein was guilty of usury such as to bar his action for equitable relief. Appellees' motion for summary judgment was granted without any statement by the District Court of its basis for ruling in favor of appellees. This appeal followed.

■ We believe that the case should have gone to trial and been determined on proper findings, if only because it does not appear on the present record that Berman's signing of Laifsky's name made the note a nullity for all purposes. True, Laifsky says he knew nothing of the insertion of his name in the note as payee. But we have heretofore held that a drawer's intent that the payee named shall have no interest in an instrument makes the instrument payable to bearer although the drawer knows the payee to be an existing person. See Callaway v. Hamilton National Bank of Washington, 1952, 90 U.S.App.D.C. 228, 195 F.2d 556; Norton v. City Bank & Trust Co., 4 Cir., 1923, 294 F. 839; Britton, Bills and Notes § 149 (1943). Whether Laifsky was a fictitious payee or whether his endorsement was forged must be the subject of proof and findings.

We think it preferable, in the light of this disposition, to allow the other questions presented to abide the proof at trial.

Reversed and remanded.

DANAHER, Circuit Judge (dissenting).

The Humbles, husband and wife, while named as parties were not served nor have they otherwise appeared in this action. It is true they executed their note for $3,000 "as deferred purchase money for and secured by 2d deed of trust on Lot 44, Square 3243" in the District of Columbia. Samuel L. Laefsky, without his knowledge, had been named payee in the note, and his purported signature thereon was affixed by Berman before he exhibited the note to ap-

pellant. If Rubinstein had sued the *makers* seeking to recover on the note, the cases cited by my colleagues might control. Compare D.C.Code § 28–124 (1951). But this is not such a case.

Quite the contrary, Rubinstein's claim for relief sought to substitute new trustees in place of those named in the second deed of trust given to secure the Humbles' note. He asked for a judgment re-establishing of record the deed of trust as valid against the world. The trustees had been named in the deed of trust without their knowledge. An instrument purporting to be their duly executed release was not signed by them. The release bore signatures which had been forged by the faithless Berman. The release, purporting to have been executed before a notary public, had been placed on record. It recited that the Humbles' note had been "fully released and discharged from the effect and operation of said Deed of Trust, the debt secured thereby having been paid and satisfied and the promissory note having been exhibited to the trustees marked 'Paid' and cancelled." The notary had certified that the named trustees had personally appeared, were personally well known to her as the persons who executed the release and they had acknowledged the same to be their act and deed. The certificate was false. There was one person who could have protected the record, as I shall hereinafter develop, and that was Rubinstein. I quite understand that Berman acted as Laefsky when he affixed to the note as endorser what purported to be Laefsky's signature. It is certainly so that the same Berman forged the names of the trustees upon the deed of release. Rubinstein paid Berman $2,550 for the note and in place of Laefsky became beneficiary to that extent, at least, under the deed of trust by which the named trustees acquired legal title to the Humbles' property. As between Rubinstein and the Humbles, Rubinstein would prevail. But Rubinstein did nothing to show himself of record as having acquired the beneficial interest of Laefsky.

So Rubinstein's negligent failure to have taken steps for his own safeguard made possible the defalcation by Berman, and as against the world or succeeding encumbrancers, he is not entitled to have the court "reinstate" his mortgage interest which had never been established in the first place. Let us now look further into the situation.

The Goldkinds, husband and wife, in reliance upon the official record which disclosed only an outstanding first deed of trust, had advanced their money, and as security therefor, had taken back what they were entitled to accept as a valid second deed of trust.

Rubinstein as appellant argues that the District Judge erred in granting the appellees' motion for summary judgment. I believe Judge McGarraghy was clearly right and that the case comes within the principles discussed and applied in Martin v. Poole, D.C.Cir.1911, 36 App.D. C. 281.[1]

In addition to the facts mentioned by my colleagues, certain other recitals are in order. Since 1912, from boyhood days, Rubinstein and one Henry Berman had been friends. Berman, engaged in brokering first and second trust notes, for many years had been selling to Rubinstein notes totaling "more, much more, than $100,000." Working out of Berman's office was one Samuel L. Laefsky whom Rubinstein had met from time to time at Berman's office. The note signed by the Humbles and the deed of trust had been prepared in Berman's office on or about September 8, 1954.

Berman showed Rubinstein the Humbles' note which he noticed was payable to Laefsky. He knew the amount of the first trust, and then went to the Humbles' property to make his own appraisal of its value. There he met the Humbles. Satisfied of the value of the property, Rubinstein paid Berman $2,550 for the $3,000 note. He knew Laefsky was not the owner of the property. He knew that Laefsky had not sold the property to the Humbles. He knew that Laefsky was not engaged in real estate, and he knew from his past experience that the name Laefsky on the note as payee meant only that he was a "straw." He made no inquiry to ascertain for whom Laefsky might be acting as a straw. Of course, Rubinstein did not want to know. When a mere telephone call could have established the exact fact, he did nothing. He made no inquiry whatever, looking to his own protection. His testimony on deposition discloses certain questions and answers thus:

"Q. Well, you knew if you made a loan direct to the Humbles and charged a discount that you would be guilty of usury, wouldn't you? A. I don't buy a note direct. I am not a broker. I always buy a consummated note from a broker."[2]

Having purchased the $3,000 note at a discount of 15%, Rubinstein deposited the note in his bank. The Humbles made the first "one or two" payments at the bank after which Berman continued the monthly payment of principal, with interest at 6%, until April 6, 1956, by

1. There, as here, the release of record recited that the note had been paid, had been shown to the trustees so marked and duly cancelled. The recital was false. There, the trustees fraudulently executed and recorded the release. Here, Berman procured a like result. But the release here, as the court held in Martin v. Poole, should protect a subsequent innocent mortgagee, for value, without notice.

2. "We do not consider this evidence sufficient to show that the defendant was a holder in due course of the original note which he claims to have purchased. The

circumstances surrounding the transaction constitute a badge of fraud which is not rebutted. Competent businessmen do not purchase notes in substantial sums executed by parties unknown to them whose credit they have not investigated. * * * A common device to conceal usury is the pretented bona fide purchase of a note at a large discount. Transactions of this character out of the normal course of business must be viewed with suspicion by the court if any real protection is to be offered to the victims of usurious moneylenders." Hill v. Hawes, D.C.Cir.1944, 79 U.S.App.D.C. 168, 169, 144 F.2d 511, 512.

which time the balance due on principal was $2,417.84. Meanwhile, on January 19, 1955, there had been placed on record the deed of release purporting to have been signed by one Harry Berman, brother of the cheat, and one Jack L. Steinman. Neither man knew that he had been named as a trustee. Neither man executed the purported release. Neither appeared before the notary. The following day there was placed on record the Humbles' new, second deed of trust to trustees Klavan and Kamins, given to secure a trust note in the sum of $5,000, payable to one Cook. When the Humbles, in marital difficulties, later abandoned the property and made no payments on the note, Berman continued the payments until April, 1956. When Rubinstein learned of Berman's trickery he was "hurt," not angry.

Although Rubinstein was paying a substantial sum for the original Humbles' note, he took no precautions to protect himself, as has been noted. The Supreme Court has pointed out, in a not dissimilar situation, that one who wished to affect subsequent purchasers with notice of his rights, "should have obtained a new conveyance or agreement, duly acknowledged and recorded, in the form either of a deed from the original grantors, or of a declaration of trust from the trustees, or of an assignment * * * of [an] equitable interest in the land as security for the payment of the notes. The record not showing that any person other than [Laefsky] had any interest in the notes, or in the land as security for their payment, an innocent subsequent purchaser or incumbrancer had the right to assume that the trustees, in executing the release, had acted in accordance with their duty."[3]

In short, when the Humbles executed their original second deed of trust to Harry Berman and Steinman as trustees, they transferred the legal title to the premises given to secure the note.

When the instrument purporting to have been a release signed by these trustees, so named, was placed of record, the Goldkinds were entitled to rely upon it. "To charge [the Goldkinds] with constructive notice of the fact that the [note] had not been paid, in the absence of any proof of knowledge, fraud, or gross or willful negligence on [their] part, would be inconsistent with the purpose of the registry laws, with the settled principles of equity, and with the convenient transaction of business."[4]

I deem the governing principles of law to be so well settled, substantially as I have outlined, I would find no error in the judgment as entered in favor of the appellees.

---

3. Williams v. Jackson, 1883, 107 U.S. 478, 483, 2 S.Ct. 814, 818, 27 L.Ed. 529. This case also arose here in the District and involved our law.

4. Id., 107 U.S. at page 484, 2 S.Ct. at page 819.