Rosa GREENE

v.

**GIBRALTAR MORTGAGE INVEST-
MENT CORPORATION et al.**

Civ. A. No. 80–183.

United States District Court,
District of Columbia.

Feb. 29, 1980.

Lawrence N. Minch, Russell B. Kinner, Washington, D. C., for plaintiff.

John D. Miller, Washington, D. C., Daren M. Stephens, Alexandria, Va., for defendants.

## MEMORANDUM OPINION

JUNE L. GREEN, District Judge.

This matter is currently before the Court on plaintiff's motions for a preliminary injunction and partial summary judgment, and defendants' oppositions thereto. Plaintiff challenges the validity of a promissory note and deed of trust on her property based on violations of the Truth-In-Lending Act, 15 U.S.C. § 1601 *et seq.*, and the District of Columbia Usury and Loan Shark Laws. After due notice to the parties pursuant to Fed.R.Civ.P. 65(a), this matter was consolidated for trial on the merits. Upon consideration of plaintiff's motions for preliminary injunction and partial summary judgment, defendants' oppositions, the testimony of witnesses and the oral arguments of counsel at the hearings in this matter, and the entire record herein, the Court concludes for the reasons set forth below that plaintiff's motion for preliminary injunction must be granted and that plaintiff's motion for partial summary judgment is denied.

*Factual Background*

Plaintiff, Rosa Greene, lives in a single family residence at 1502 Emerson St., N.W., Washington, D.C. which she purchased in 1966. The purchase was financed with a loan in the amount of $26,000 from the Carey Winston Company. In the spring of 1979 Mrs. Greene fell behind in her mortgage payments. In addition, her pipes burst during the winter and she needed money to pay for plumbing repairs. Mrs. Greene contacted several loan companies by phone and was turned down each time. She then called defendant, Gibraltar Mortgage Investment Corporation, a firm located in Arlington, Virginia. She spoke with Gibraltar's president, Mr. Willis Kemper, and met subsequently with him at Gibraltar's office on June 1, 1979.

At this meeting, Mr. Kemper informed Mrs. Greene that she could not obtain a loan unless it was for a "business purpose." He discussed converting her single family home to a rooming house and encouraged her to apply for a rooming house license so that proof of a business purpose could be substantiated. Mrs. Greene gave Kemper $40.00 to process the loan application. Mr. Kemper visited the property at 1502 Emerson St. and appraised it at $49,000 without ever going inside. He left on vacation June 15th and left his secretary, Ms. Judi Boaz in charge.

In mid-June 1979, plaintiff received a letter from an attorney representing the Carey Winston Company, the holder of the first deed of trust. This letter threatened to accelerate Mrs. Greene's obligations under the note and to foreclose unless all amounts due were received by June 21, 1979. She conveyed this information to Gibraltar on June 20, 1979. On the afternoon of June 21, 1979, plaintiff executed a promissory note to Gibraltar secured by a deed of trust on her property at 1502 Emerson St. N.W. In addition to plaintiff, Ms. Boaz and Mr. J. D. Miller, the settlement attorney and one of the trustees under the deed of trust, were present.

At settlement, Mrs. Greene discovered for the first time that the principal of the note was $5,800, even though she and Mr. Kemper had only discussed a loan in the amount of $3,000. The statement of charges indicates that of this $5,800, $2,800 was deducted as a broker's fee and $290.00 was deducted in settlement fees. Immediately, Gibraltar dispatched a messenger to pay $1,581.90 directly to the Carey Winston Company that very afternoon. Plaintiff therefore only received $1,128 in proceeds allegedly to

convert her home into a rooming house. The day after it was executed, Gibraltar assigned all of its interest in the note to defendant G. R. Quittschreiber. Plaintiff was to pay him $117.62 per month for five years thus paying approximately $7,000 for the use of $2,710.

In September 1979, plaintiff became unemployed and fell behind in her payments under both the first and second deeds of trust. In December, defendant Quittschreiber contacted J. D. Miller and asked him to proceed with foreclosure. Shortly, thereafter, Quittschreiber went to Mrs. Greene's home and demanded payment in person and warned her that if she heard from Mr. Miller, she would be liable for attorney's fees. Mr. Miller then sent a letter to Mrs. Greene which informed her that all payments due under the promissory note had been accelerated and that foreclosure proceedings would be initiated if the note were not paid in full.

Mr. Miller visited plaintiff the day she received the letter and suggested that he could find an investor to enter into a contractual arrangement with her. This investor, according to Mr. Miller, would make Mrs. Greene's payments through March and give her $1,000 to pay for fuel oil. She could remain in the house for a year, during which time she could buy back the contract for $10,000.

Plaintiff then contacted an attorney who initiated this action, claiming violations of federal and District of Columbia consumer protection statutes.

*Discussion*

■ The Court need not decide this case on any statutory basis for this entire transaction was tainted with fraud and misrepresentation.

■ A contract is void for fraud or misrepresentation where a party makes assertions not in accord with the facts regarding essential terms of the proposed contract, reasonably inducing apparent assent by one who neither knew or had reasonable opportunity to know what those essential terms were. *See* Restatement of Contracts

§ 475 (1932); Restatement (Second) of Contracts § 305 (Tentative Draft No. 12, 1977); *Hill v. Marston*, 82 F.2d 856, 65 U.S.App. D.C. 250 (1936). Omission or concealment of material facts can constitute a misrepresentation, just as a positive, direct assertion can. Restatement (Second) of Contracts § 306 (Tentative Draft No. 12, 1977); *Andolsum v. Berlitz School of Languages of America*, 196 A.2d 926, 927 (D.C.1964); *Borzillo v. Thompson*, 57 A.2d 195, 197–98 (D.C. 1948); *see Nader v. Allegheny Airlines, Inc.*, 445 F.Supp. 168, 174 (D.D.C.1978). Where a party's assertion not in accord with the facts induces the apparent assent of another party, there is no meeting of the minds and hence no contract. *Hill v. Marston, supra; Lyon v. Smith*, 2 App.D.C. 37, 39 (1893) (deed of trust void where true rate of interest misrepresented); *Hollywood Credit Clothing v. Gibson*, 188 A.2d 318, 319 (1963). This is so even where the misrepresentation inducing assent is not deliberate. *Battelle v. Cushing*, 21 D.C. 59, 71–72 (1892); *Hollywood Credit Clothing v. Gibson, supra*, 188 A.2d at 319.

In this case, defendant failed to disclose material facts to plaintiff in the negotiations that led to the promissory note and deed of trust. First, when plaintiff discussed the terms of a loan with Mr. Kemper, they agreed that the principal amount of the loan was to be in the vicinity of $3,000, which amount she would repay at an interest rate not out of line with prevailing market rates for second mortgages. Gibraltar did not explain or disclose that it charged a fee for brokering the loan, which, in this instance, amounted to more than the actual proceeds of the loan. Second, Gibraltar failed to disclose the significance of designating the loan as a business purpose loan, which operates as a waiver of rights plaintiff might otherwise exercise under federal and local consumer protection statutes. Moreover, that this was a sham designation is evidenced by the fact that Gibraltar paid over half of the proceeds to Carey Winston Company to eliminate plaintiff's *personal* debt. These material omissions become particularly significant once the circumstances surrounding execution of

the promissory note and deed of trust are examined.

Gibraltar was aware when Mrs. Greene arrived at its office on the afternoon of June 21, 1979 that she was faced with the threat of imminent foreclosure. The papers had to be signed quickly so that Gibraltar could pay Carey Winston Company by the close of business that day. Gibraltar, in scheduling the execution of the loan documents without providing sufficient opportunity to review them, and without having disclosed the additional costs of the transaction, took advantage deliberately of the fact that plaintiff was faced with the unpleasant alternative of either signing the papers as they were offered or losing her home.

■■ The Court concludes that Gibraltar's actions in the negotiations and execution of the loan documents contain all the elements necessary to render a contract void for fraud or misrepresentation: defendants, through affirmative statements and material omissions, made assertions not in accord with the facts regarding essential terms of the proposed contract (the true "price" of the loan; the attempted waiver of consumer protections), reasonably inducing apparent assent (her signature) by one who neither knew nor had reasonable opportunity to know what those essential terms were. *See* R*e*statement (Second) of Contracts §§ 301–305 (Tentative Draft No. 12, 1977); *Hill v. Marston, supra.*[1]

■ In addition to the above findings, the Court concludes that this entire transaction, and especially the $2,800 broker's fee charged by Gibraltar is so exorbitant and bears so little connection to any services rendered that it shocks the conscience of the Court.

The U.S. Court of Appeals for the D.C. Circuit has held that "where the element of unconscionability is present at the time a contract is made, the contract should not be

enforced." *Williams v. Walker-Thomas Furniture Co.,* 350 F.2d 445, 449 (D.C.Cir. 1965). The court there set out criteria for determining the existence of unconscionability: "an absence of meaningful choice on the part of one of the parties, together with contract terms which are unreasonably favorable to the other party," and the first party's lack of "a reasonable opportunity to understand the terms of the contract." *Id.*

■ The foregoing discussion of the facts establishes clearly that plaintiff lacked any meaningful alternative at the time the loan documents were executed. The terms of the loan were overwhelmingly favorable to Gibraltar and Quittschreiber, who loaned $2,710 and anticipated a return of approximately $7,000. Plaintiff had no opportunity to review the papers because they had to be signed, and Carey Winston had to be paid that day. Accordingly, this transaction is not only void and unenforceable on grounds of fraud and misrepresentation, but also on grounds of unconscionability.

■ The Court's finding of fraud and unconscionability applies to G. R. Quittschreiber as well, who may not claim the status of a holder in due course.[2] Apart from specific statutory limitations on the holder-in-due-course doctrine, the courts of the District of Columbia have imposed a heavy burden of proof on parties who seek to establish the status of a holder in due course. Where a transaction appears to be outside the normal course of business or usurious, courts must view with suspicion a defense of holder in due course. *Hill v. Hawes,* 144 F.2d 511, 512, 79 U.S.App.D.C. 168, 169 (1944). In that case, the Court of Appeals stated:

> We do not consider this evidence sufficient to show that the defendant was a holder in due course of the original note which he claims to have purchased. The circumstances surrounding the transac-

---

1. The principles of contract law discussed above are fully applicable to deeds of trust: where fraud taints a loan or credit transaction, the deed of trust securing that transaction may be declared void and unenforceable. *See King v. Kitchen Magic, Inc.,* 391 A.2d 1184 (D.C.

1978). Thus, neither J. D. Miller nor Theresa Sabino, the trustees under the deed of trust, may initiate foreclosure proceedings.

2. *See* 28 D.C.C. § 1–101 *et seq.*

tion constitute a badge of fraud which is not rebutted. Competent businessmen do not purchase notes in substantial sums executed by parties unknown to them whose credit they have not investigated.

■ In the present case, defendant Quittschreiber failed to produce substantial evidence to rebut the "badge of fraud" surrounding this transaction. The evidence indicated he had a close business relationship to the other defendants and that he purchased the note at a substantial discount. In addition, he did not investigate plaintiff's credit independently, rather he relied solely on Mr. Kemper's representation as to the value of the property. Accordingly, he may not claim to be a holder in due course and is barred along with the other defendants from initiating foreclosure proceedings on plaintiff's property.

■ In light of the foregoing discussion, the contract and deed of trust are void and unenforceable on grounds of fraud, misrepresentation and unconscionability. Defendant Quittschreiber has not carried his burden of establishing that he is a holder in due course. Plaintiff is thus under no obligation to repay any of the money she received or make any further payments to Mr. Quittschreiber. Defendants are enjoined permanently from initiating proceedings to foreclose on plaintiff's property.

### ORDER

This matter is before the Court on plaintiff's motion to alter or amend judgment and defendants' opposition thereto. In its memorandum opinion of February 29, 1980, the Court voided a promissory note and deed of trust executed on plaintiff's property located at 1502 Emerson Street, N.W. and enjoined the trustees and the holder of the note permanently from exercising their powers of sale and commencing foreclosure proceedings on the property.

Plaintiff now seeks statutory penalties and attorney's fees prescribed under the Truth In Lending Act, 15 U.S.C. § 1640 (1976) and punitive damages. Plaintiff, however, has already received approximately $3,000 interest free as a result of the Court's ruling and is thus not entitled, in the Court's view, to any additional award.

Accordingly, it is by the Court, this 27th day of March 1980,

ORDERED that plaintiff's motion to alter or amend judgment insofar as it seeks damages under the Truth In Lending Act is hereby denied; and it is further

ORDERED that plaintiff may apply for attorney's fees only when a final decision has been rendered by the United States Court of Appeals for the District of Columbia Circuit; and it is further

ORDERED that the order entered in this action on February 29, 1980 shall be stricken and the amended order attached hereto shall be substituted therefor nunc pro tunc Feb. 29, 1980.