James W. BEATTY, Appellant,

v.

FRANKLIN INVESTMENT COMPANY,
Inc., Appellee.

No. 16991.

United States Court of Appeals
District of Columbia Circuit.

Argued Dec. 14, 1962.

Decided May 16, 1963

Petition for Rehearing En Banc Denied
En Banc June 24, 1963.

Petition for Rehearing by the Division
Denied June 24, 1963.

Mr. Robert C. Handwerk, Washington, D. C., for appellant.

Mr. Samuel H. Suls, Washington, D. C., with whom Mr. Carl P. Fogel, Washington, D. C., was on the brief, for appellee.

Before BAZELON, Chief Judge, and WILBUR K. MILLER and BURGER, Circuit Judges.

WILBUR K. MILLER, Circuit Judge.

On July 16, 1959, James W. Beatty purchased from Auto Discount Corporation a used automobile, the cash price of which was $695. After a down payment of $294 and a trade-in allowance of $100, the cash balance due was $301. To cover this balance and a finance charge of $150, Beatty executed to Auto Discount a promissory note for $451 payable in monthly instalments over a period of twelve months. A conditional sales contract was executed simultaneously. On

the same day, Franklin Investment Company, which had furnished the forms on which the note and contract were executed and which had approved Beatty's credit application, paid Auto Discount the cash balance of $301 and received from it the note and contract.

In 1961, Franklin Investment Company sued Beatty in the Municipal Court for the District of Columbia[1] for a balance of $205.04 alleged to be due on the note, for costs and an attorney's fee of 15 per cent. It averred that it was a holder in due course, "having received the note for valuable consideration from Auto Discount Corporation."

Beatty's answer included these defenses: (a) that he was not indebted to Franklin in the sum sued for, and that Franklin was not a holder in due course, and (b) that plaintiff Franklin

"* * * agreed to lend defendant the sum of $301.00, representing the cash balance due under a certain conditional sales contract mentioned in said note; that in making said loan to defendant, plaintiff charged the sum of $150.00 as interest, which was to be paid in a year's time and that said amount of interest is included in the principal sum of $205.04 sued for herein; that the consideration for said note is illegal, usurious, and in violation of law; that the interest rate charged for said loan amounts to 50% per annum, which defendant states is illegal."

The trial judge, sitting without a jury, heard evidence and entered judgment for Franklin Investment Company.

On Beatty's appeal, the case was heard by the Municipal Court of Appeals[2] on a record consisting of the pleadings and exhibits, and an "Agreed Statement of Proceedings and Evidence" approved by the trial judge. Hence, the record before the appellate court did not contain any findings of fact or conclusions of law made by the trial judge nor any intimation of the reasoning upon which he based his decision, except such as were disclosed in the Agreed Statement of Proceedings and Evidence. The Municipal Court of Appeals affirmed,[3] and we granted Beatty's petition for an appeal from its judgment.

■ The basic question is whether the transaction was usurious. It is necessary, however, first to determine whether Franklin was a holder in due course; for, if it was, the defense of usury was not available to Beatty. With respect to this, the Municipal Court of Appeals said, 179 A.2d at 914:

"* * * The record reveals evidence * * * of valuable consideration being paid therefor to support the trial judge's finding that the appellee was a holder in due course or at least for value * * *."

We observe, however, that the Agreed Statement does not show the trial judge found appellee was a holder in due course, but only that it paid $301 and received therefor a note for $451. That Franklin was a holder for value is not enough to constitute it a holder in due course. In order to have the latter status, Franklin must have taken the note under the circumstances outlined in § 28–402, D.C. Code (1961),[4] including the circumstance

---

1. Now the District of Columbia Court of General Sessions.

2. Now the District of Columbia Court of Appeals.

3. Beatty v. Franklin Investment Co., D.C. Mun.App., 179 A.2d 913 (1962).

4. That section is as follows:
   "A holder in due course is a holder who has taken the instrument under the following conditions:

   "First. That it is complete and regular upon its face.
   "Second. That he became the holder of it before it was over due [*sic*], and without notice that it had been previously dishonored, if such was the fact.
   "Third. That he took it in good faith and for value.
   "Fourth. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

that, at the time the note was negotiated to it, it had no notice that usury was embraced therein. This of course depends on whether the note in fact contained usury, so in a sense the two issues are intertwined.

Items B to K of the contract, reproduced as an Appendix to this opinion (*infra*, page 716), make it clear that somebody charged Beatty $150 for financing a cash balance of $301, and that Franklin acquired at a discount of more than $33\frac{1}{3}$ per cent a note for $451 secured by a conditional sales contract covering an automobile valued at $695.

We said in Hill v. Hawes:[5]

"We do not consider this evidence sufficient to show that the defendant was a holder in due course of the original note which he claims to have purchased. The circumstances surrounding the transaction constitute a badge of fraud which is not rebutted. Competent businessmen do not purchase notes in substantial sums executed by parties unknown to them whose credit they have not investigated. This circumstance, coupled with the fact that the defendant claims to have bought a note which was amply secured at the outrageous discount of about 40%, makes a prima facie showing of usury which must be explained before the purchaser can be found to be a holder in due course. Victims of usury are usually ignorant people who have no access to reputable credit agencies. A common device to conceal usury is the pretended bona fide purchase of a note at a large discount. Transactions of this character out of the normal course of business must be viewed with suspicion by the court if any real protection is to be offered to the victims of usurious moneylenders."

■■ The present case differs somewhat from Hill v. Hawes. Here, the note Franklin claims to have purchased at the slightly less outrageous discount of $33\frac{1}{3}$ per cent was for a relatively small amount, and was secured by a conditional sales contract instead of a trust on realty. Admittedly, Franklin had investigated Beatty's credit. Despite these minor differences, we think the circumstances surrounding the transaction, like those in Hill v. Hawes, constituted a badge of fraud and made a *prima facie* showing of usury which had to be explained before Franklin could be found to be a holder in due course.

Franklin's explanation was that the note had been given for the balance of a credit price of which the finance charge of $150 was a part, and that therefore the note was not usurious. The Municipal Court of Appeals accepted this explanation. It affirmed on the theory that a bona fide sale on credit on a price which exceeds the cash price by more than the legal rate of interest does not constitute usury. With respect to this it said, 179 A.2d at 914:

"This court has had occasion previously to pass upon the legality of conditional sales contracts of this character on a time basis.* 'The sale at a *Time Price* to the original purchaser, under a conditional sale agreement providing for monthly installments and including charges for insurance, financing and other related services for the privilege of buying on time rather than by cash, is not violative of the usury statute.' ** We are of the opinion still that this is a correct general statement of the law."

** Brooks v. Auto Wholesalers Inc. et al., D.C.Mun.App., 101 A.2d 255, 257; Lincoln Loan Service Inc. of Takoma Park v. Motor Credit Co., Inc., D.C. Mun.App., 83 A.2d 230.

*** District of Columbia v. Hamilton National Bank of Washington, D.C.Mun. App., 76 A.2d 60, 67 (and cases cited therein—p. 67 (n. 19))."

But this note did not contain charges for insurance or "other related services."

5. 79 U.S.App.D.C. 168, 169, 144 F.2d 511, 512 (1944).

As shown in the portion of the contract reproduced in the Appendix, the only item added to the cash balance of $301 was the finance charge of $150, which was not intended to compensate Auto Discount for selling on time, as the credit terms had been pre-arranged with Franklin. Auto Discount simply received the balance of its cash price without any further responsibility [6] and hence could hardly have contemplated an enlarged "time price" sale when the contract was executed. The real nature of the transaction was admitted when, as revealed in the Agreed Statement, the vice president and general manager of Franklin Investment Company testified that his company was also in the business of lending money, and that it "charged defendant [Beatty] $150.00 to finance a balance of $301.00 in the contract." In its brief filed with us, Franklin repeated that statement.

We have not had occasion heretofore to consider the question which the Municipal Court of Appeals answered in the language it quoted from its opinion in District of Columbia v. Hamilton Nat'l Bank,[7] and we deem it unnecessary to do so now. Assuming, without deciding, that a conditional sale such as described by the Municipal Court of Appeals does not violate the usury statute, we hold that the transaction here involved does not fall in that category because, as we have said, there was no "time price" which included "charges for insurance, financing and other related services for the privilege of buying on time rather than by cash."

■ Although the Municipal Court did not specifically find that the note was pursuant to a credit sale, perhaps such a finding may be implied from its judgment. If so, we think it clearly erroneous. Moreover, as the evidence was largely documentary and there was no issue as to the credibility of witnesses, we are as well situated as was the Municipal Court to find the facts with respect to the nature of the transaction. We hold that it was a cash sale accompanied by a loan bearing a usurious rate of interest,[8] which Franklin was not entitled to recover.

In Searl v. Earll, 95 U.S.App.D.C. 151, 156, 221 F.2d 24, 29 (1954), we said:

"* * * D.C.Code § 28–2703 (1951) provides as to a usurious contract, that 'the creditor shall forfeit the whole of the interest so contracted to be received'. We have held this to mean that 'the forfeiture applies not only to the usurious excess but also to the lawful interest included in the contract rate * * forfeiting all of the interest contracted for, if unpaid, or * * * permitting its recovery, if paid, by action begun within one year after payment.' Richards v. Bippus, 1901, 18 App.D.C. 293, 304. * * * " See also § 28–2705, D.C.Code (1961).

The judgment of the Municipal Court of Appeals is therefore reversed and the case is remanded to be returned to the Municipal Court to determine the amounts paid on the note and the balance, if any, due thereon after such payments and after the elimination of all interest, both usurious and legal, and to enter judgment accordingly.

It is so ordered

---

6. Franklin's brief admits, on page 6, that in purchasing this note and contract, it assumed the risk of allowing Beatty to make time payments. Therefore, Auto Discount transferred the note and contract without recourse.

7. 76 A.2d 60, 67.

8. See Daniel v. First National Bank, 227 F.2d 353 (5th Cir., 1955), rehearing denied 5 Cir., 228 F.2d 803 (1956).

# APPENDIX

to sign these papers unless they are completely filled
ment I am acknowledging that they were completely
a duplicate of every paper which I have signed

Witness

Purchaser

**B.** Total Cash Sales Price .................................................. $ 695.00
**C.** Cash Down Payment .......................... $ 294.00
**D.** Trade-in Allowance (Net) .................. $ 100.00

(Describe Car)                    Total $ 394.00

**E.** Total Cash Balance ........................................................ $ 301.00
**F.** Cost of Insurance and Summary of Coverage:
Term: ............ Coverage: Actual Cash Value □ Fire, □ Theft □ Deductible Collision.
Other Coverage: ........... Customer will furnish Insurance for ............... $
Name of Insurance Co.: ........ Length of Contract ...........
This insurance within its limits covers the purchaser herein as his interest may appear at time of loss.
This insurance does not include coverage for property damage or personal injuries to others.

**G.** All other charges: ........................................................... $

**H.** Amount of Finance Charge ................................................. $ 150.00
**I.** Total Time Balance ........................................................... $
**J.** Total Time Sales Price ...................................................... $ 451.00
**K.** Terms of Payment: 11 payments of $ 18.95 on the 16th day of each week, semi-month, month, beginning August, 1959, and a final payment of $ 242.55.

Said purchaser agrees to make said deferred payments in accordance with the terms of a certain promissory note the face value of Four Hundred & Fifty-One & No/100- - - - Dollars ($ 451.00 ) even date herewith executed by said purchaser and made payable to seller in monthly installments beginning August, 1959.

To induce Seller to deliver possession of said Car to Purchaser, the Purchaser hereby agrees with the Seller, and hereby makes the covenants and warranties set out on the reverse side hereof under the caption "Agreements, Covenants and Warranties of Purchaser."

**Schedule of Irregular Installments**

| | |
|---|---|
| $ ........... | on ..........., 19...... |
| $ ........... | on ..........., 19...... |
| $ ........... | on ..........., 19...... |
| $ ........... | on ..........., 19...... |

PREMIUM IS SUBJECT TO ADJUSTMENT BY THE
INSURANCE CARRIER ACCEPTING THE COVERAGE.