KATZ, ET AL. *v.* SIMCHA COMPANY, INC.

[No. 347, September Term, 1967.]

228

*Decided October 23, 1968.*

The cause was argued before HAMMOND, C. J., and MAR-BURY, McWILLIAMS, FINAN and SMITH, JJ.

*Isadore B. Katz,* with whom was *J. Ambrose Kiley* on the brief, for appellants.

*Herman Miller,* with whom were *Collins, Lawrence & Larsen* on the brief, for appellee.

FINAN, J., delivered the opinion of the Court.

Joseph Katz and Pauline Katz, his wife, have appealed from a judgment in the amount of $4,900.50, rendered against them in the Circuit Court for Montgomery County in an action at law brought by the appellee, Simcha Company, Inc., to obtain a deficiency judgment on two promissory notes dated July 6, 1955. The notes were secured by two deeds of trust on property designated as No. 712 F Street N. W., Washington, D. C. The trusts were second and third trusts respectively, being subject to a first trust in the amount of $7,000.00. At the time of the execution of the notes by the appellants they were made payable to the order of Jennie Michaelson, a secretary in the office of William Spurling, a real estate broker who negotiated the sale of the notes. One was in the amount of $4,950.00 payable at the rate of $50.00 each month, the entire balance being due in five years and the second in the amount of $1,000.00 payable at the rate of $10.00 each month. Both notes bore interest at the rate of six per cent (6%) per annum.

The record reveals that Jennie Michaelson purchased the property 712 F Street, N. W., from an Arren Paulson and the same day July 6, 1955, conveyed it to the appellants, receiving from them as a part of the consideration for the purchase price the two promissory notes which we have mentioned. The deeds and deeds of trust were all recorded July 19, 1955. It would also appear from the record that the appellants deposited $2,000.-00 in cash with the real estate agent, Spurling, and further that the appellants either purchased the property subject to an existing first trust in the amount of $7,000.00 or arranged to borrow that sum, secured by a first trust in that amount, from the Perpetual Building Association, the total purchase price being $14,950.00.

There was evidence to the effect that Jennie Michaelson was a "straw man" for her employer William Spurling, in this purchase from Paulson and sale to the Katzes, and that Spurling was the real party at interest.

There was also testimony that Mr. and Mrs. Katz were acting in some capacity as "straw men" for the same William Spurling, which might well surround this transaction with a

malodorous aura. However, the testimony fails to reveal that Mr. Irvin Kas, or the corporate holders of the notes, whom he represented in the purchase of the notes, knew of any such "straw man" transactions on the part of Spurling. The only positive testimony· on this point came from Spurling himself, who stated that Irvin Kas did not know of the "straw man" position of Mr. and Mrs. Katz. It is significant to note in this connection, as did the lower court in its opinion, that the appellants, Mr. and Mrs. Katz, did not testify in this case.

Thereafter, it appears that the note dated July 6, 1955, in the amount of $4,950.00 was sold for $3,150.00 and about two weeks later the note of July 6, 1955, in the amount of $1,000.00 was sold for $300.00, both to the District Mortgage and Investment Corporation, of which Irvin Kas was an officer and director. At the direction of Mr. Spurling the check in the amount of $3,150.00 in payment of the $4,950.00 note was made payable to the District Title Insurance Company and the check in the amount of $300.00 for the purchase of the $1,000.00 note was made payable to Franklin Realty Co. A Mr. Paroni, Vice-President of the District Title Insurance Company, which handled the preparation and filing of the papers, testified that the settlement sheet showed the Title Company did in fact receive $3,150.00 from the sale of the one note for application to the purchase price which Jennie Michaelson paid to Arren Paulson.

The deeds of trust were all properly recorded in the District of Columbia.

There was evidence that Mr. Irvin Kas prior to purchasing the notes made some inquiry and investigation concerning them, with both the realtor, Mr. Spurling and the District Title Insurance Company.

The appellants made some 38 payments from August 25, 1955, through September 18, 1959, on the larger note and continued payments on the smaller note until January 18, 1960. There was also evidence that prior to instituting the foreclosure proceedings in the District of Columbia, Irvin Kas visited the appellants at their place of business in Virginia, in an effort to impress them with the necessity of bringing the payments up

to date, and personally collected several payments from them, although shortly after the notes had been purchased by the District Mortgage and Investment Corporation they had been placed in the hands of the American Security and Trust Company for collection purposes. The District Mortgage and Investment Corporation assigned the notes to the appellee, Simcha Company, Inc., another corporation owned and controlled by Irvin Kas and his associates.

On March 31, 1960, the notes secured by the second and third trust then being in default, the appellee, as the holder and owner of the notes directed the trustees to foreclose on the second deed of trust. The trustees advertised the property for sale under the power contained in the trust and the appellee "bought in" the property for the sum of $1,000.00 at public sale, he being then and there the highest bidder. The property was sold subject to the first deed of trust which then had an unpaid balance in the amount of $5,443.46. There does not appear to have been any irregularity concerning this sale.

The appellee further testified that it had paid $300.00 to the Perpetual Building Association to make current the payments in arrears on the first deed of trust and certain water bills due the District of Columbia, auctioneer fees and other expenses incident to the sale.

On August 1, 1961, the appellee filed this action to obtain judgment for the deficiency represented by the unpaid balance due on both notes which it contended amounted to $5,389.50, with interest on $3,833.95 from October 6, 1959, and interest on $1,555.55 from January 18, 1960. The case was heard by Judge Shure sitting without a jury.

Although Mrs. Katz, as one of the defendants below, filed a general issue plea on July 13, 1962, and Mr. Katz filed his plea September 21, 1964 (there having been some difficulty in obtaining service on Mr. Katz), the party defendants did not file a special plea setting up the defense of usury until September 12, 1966.

The appellants raise the following contentions on appeal: (1) the defense of usury, arguing that the substantial discount at which the notes were purchased was indicative that the instruments were a devious method to circumvent the usury law; (2)

that purchase of the notes at such a substantial discount should nullify the appellee's contention that it was a holder in due course; (3) appellants as "straw men" for the realtor, William Spurling, were in effect accommodation makers and that William Spurling was the maker; (4) that appellee Simcha Company, Inc., was not a holder of the note for value; (5) that appellee sued in the wrong cause of action and could not maintain a suit for a deficiency because the deed of trust did not contain a covenant to pay the debt; (6) that appellee was not entitled to sue in the Maryland Courts because it was a Delaware corporation not qualified to do business in Maryland; (7) that there was a fatal variance between the declaration, wherein it was alleged that the appellee was a District of Columbia corporation, and the testimony at the trial which revealed the appellee to be a Delaware corporation; and (8) that the lower court erred in its refusal to allow appellants to attack the fairness of the foreclosure proceedings in the District of Columbia.

## I through IV

The first four contentions of the appellants which we have enumerated above, all stand or fall on the question of whether the transactions, whereby the appellee purchased the notes on which the appellants appear as makers, were permeated with fraud to which the appellee was a party.

We call attention to the fact that the lower court heard this case sitting without a jury and accordingly was to judge both the law and the facts. Maryland Rule 886 a provides:

> "a. Upon Both Law and Evidence.
>
> "When an action has been tried by the lower court without a jury, this Court will review the case upon both the law and the evidence, but the judgment of the lower court will not be set aside on the evidence unless clearly erroneous and due regard will be given to the opportunity of the lower court to judge the credibility of the witnesses."

The significance of Rule 886 a cannot be minimized in this case because the several legal theories upon which the appellants relied to establish their defense became inapplicable be-

cause of their failure to prove the facts which may have rendered their theories apposite.

The lower court found that the evidence did not support a finding of any devious or fraudulent conduct on the part of the appellee which colored the transaction and we do not think the court erred in so holding.

Judge Shure having had the opportunity to observe and listen to the witnesses and form an opinion as to their credibility made these observations in his opinion:

"* * * both of the defendants did sign the notes in July, 1955 and they did sign deeds of trust in July 1955 and according to the testimony in this case, the first time that they mentioned anything irregular about the transaction was when they filed a plea of usury on September 16, 1966.

"In addition the suit was filed in August 1961 and their original plea doesn't mention usury or anything improper, but merely a general plea—a general issue plea that they were not indebted as alleged.

"* * * there is no evidence from any source, from any witness of any improper conduct on the part of the corporation, who is the plaintiff in this case or Irvin Kas, who testified in the corporation's behalf.

"There is no evidence that he had any knowledge that the broker was going to use any part of the money for improper purposes if this was in fact the case, and as I intimated, there is no evidence that he knew or could have known that there was any irregularity about the transactions, if in fact, there was any irregularity there.

"The evidence before me indicates that there was no irregularity, but I mention that because the attorney for the defendants keep repeating that there is something improper about this transaction.

"In any event, Mr. and Mrs. Katz signed the notes and they signed the deed of trust and there is no evidence that there was any duress or impropriety about that and more importantly, there is no evidence that Mr. Kas for the plaintiff corporation had any knowl-

edge that there was anything improper about it. On the contrary, the evidence is that he knew the Katzs, Mr. and Mrs. Katz for a year prior to that time. He says that, and that he went and saw the property that was to be security for the note and that he got a statement from Mr. Spurling the broker and then he delivered the money, so he paid for the notes that he received, and the evidence further discloses that later on he not only received payment for the notes. . .on the notes, but that he went to Virginia and made collections from the Katzs and he talked about conversations that he had with them and that finally they told him that things weren't working out so, he foreclosed on the second trust note and he purchased the property and there is no evidence that there was anything irregular about the sale and he testified without contradiction that he bought the property for $1,000."
[Subject to the first trust.]

To this we add, that the testimony of Mr. Paroni, an officer of the District Title Insurance Company, who explained the data contained on the settlement sheets prepared by an employee of the Title Company, reveals that $3,150.00 was paid by Jennie Michaelson to Arren Paulson, from whom she purchased the property, simultaneously with her sale to the appellants, and this $3,150.00 came from the proceeds of the sale of the second trust note. This is corroborative of the fact that this was the $3,150.00 which Mr. Kas paid for the second trust note on behalf of the District Mortgage and Investment Corporation and which bore on its face the legend that it was given for "deferred purchase money." The settlement sheet, which was received in evidence, further revealed that the purchase price on the sale from Jennie Michaelson to the appellants was listed at $14,950.00. Mr. Katz affixed his signature to the sheet signifying his approval of its contents.

The appellants rely heavily on the cases of *Hill v. Hawes*, 79 U. S. App. D. C. 168, 144 F. 2d 511 (1944), and *Beatty v. Franklin Investment Company, Inc.*, 115 U. S. App. D. C. 311, 319 F. 2d 712 (1963). We think that both cases are distinguishable from the case at bar.

In *Hawes, supra,* the Court said:

> "The defense is that the $2,286.80 was advanced by the defendant, not as a loan, but as the purchase price of a previously executed $3,600 note which he testified he bought in due course at a 40% discount from a man named Robinson. This note was signed by the Byrds and secured by a trust deed on the same property. Robinson was the payee. Defendant testifies that he did not know either the Byrds or Robinson but bought the note through a man named McKinley, who represented himself to be the agent of Robinson.
>
> "We do not consider this evidence sufficient to show that the defendant was a holder in due course of the original note which he claims to have purchased. The circumstances surrounding the transaction constitute a badge of fraud which is not rebutted. Competent businessmen do not purchase notes in substantial sums executed by parties unknown to them whose credit they have not investigated. This circumstance, coupled with the fact that the *defendant claims to have bought a note which was amply secured* at the outrageous discount of about 40%, makes a prima facie showing of usury which must be explained before the purchaser can be found to be a holder in due course. * * *."
> (Emphasis supplied.) [Id. at 169]

In *Beatty, supra,* the Court again found circumstances surrounding the transaction which constituted a badge of fraud and "made a *prima facie* showing of usury which had to be explained before Franklin could be found to be a holder in due course." [Id. at 714]

Note, however, that in the instant case we are dealing with a second and third trust which were subject to a first trust in the amount of $7,000.00, a substantial sum when viewed in contemplation of the purchase price of $14,950.00. It is not unreasonable to assume that a second and third trust under such circumstances might well be purchased at a substantial discount. See *Metropolitan Loan and Trust Co. v. Schaefer,* 44 App. D. C. 356 (1916), *Elliott et al. v. Schlein,* 104 A. 2d 418 (1954). It could not be said that there was ample security for the trust,

as was stated by the court in *Hills v. Hawes, supra;* nor are we dealing with a situation such as found in *Beatty, supra,* wherein the court had before it a chattel mortgage transaction securing the sale of a motor vehicle, which instrument had on its face an item listed "finance charge" of $150.00 and which was included as a part of the purchase price which was listed at $695.00. The cash down payment was $294.00; there was a trade-in allowance of $100.00 and an unpaid balance of $301.00, on which there was the stated finance charge of $150.00, all incorporated in the purchase price.

The lower court readily agreed with the law set forth in *Hill v. Hawes, supra,* and *Beatty, supra,* but pointedly observed that the facts of the instant case did not square with those cited by the appellants. The court emphasizes, as we have noted in the excerpts from its opinion which we have quoted, that the appellee did not purchase the notes from a stranger but knew the appellants, that Kas visited the property, made inquiries concerning the transaction from the realtor involved and the Title Company, and had no knowledge of any "straw" transactions on the part of the appellants. One cannot review the opinion of the lower court without concluding that it found that if there were any suspicious circumstances raised by the discounting of the notes, it had been rebutted by the testimony and evidence presented by the appellee. Certainly the appellants, while relying upon *Hill v. Hawes, supra,* and *Beatty, supra,* did little at the trial of this matter to bring their case within the scope of those decisions, as they did not testify as to their version of the transaction and did not rebut the testimony of the appellee. Furthermore, their own delay in raising the defense of usury two years after filing their general issue plea did not strengthen their defense.

We do not think that under the circumstances of this case the transactions were usurious. We hasten to point out that any action to recover any usurious portion of the interest, if in fact it was usurious, would had to have been brought within one year of the date of payment of the interest (D. C. Code (1961), § 28-2704), which of course was not done in this case. The finding by the lower court that the transactions were not usurious is also significant in dispelling the badge of fraud,

which if it had existed would have affected other questions surrounding the transaction, such as the appellee's knowledge as to whether or not the appellants were "straw men" of Spurling, as they alleged, and therefore accommodation makers.

Again, in viewing the findings of the lower court we see that it was satisfied that the appellee had no knowledge of the appellants being cast in any role, other than in their capacity of maker and had no knowledge that they were "straw men" of Spurling.

We accept the court's finding that the appellee is a holder in due course, for reasons we have already indicated. We also note, that once it is conceded that the appellee was a holder in due course, the defense of usury is not available to the appellants. *Beatty v. Franklin Investment Company*, 319 F. 2d 712, 713 (1963). As a corollary to the finding that the appellant is a holder in due course, we think it becomes of no significance that the District Mortgage and Investment Corporation, which was controlled and owned by Irvin Kas and Associates, assigned the note to the appellee, a corporation also controlled and owned by Irvin Kas and Associates, without value. It was explained by Mr. Kas on cross-examination that this transfer of the notes was done for bookkeeping purposes and that both companies "were owned by the same people"; this testimony was uncontradicted.

## V

The appellants advanced the argument that the appellee sued in the wrong cause of action and could not sustain a suit for a deficiency because the deed of trust did not contain a covenant to pay the debt. This was an action brought to obtain a judgment for the unpaid balance, together with interest due and owing, on the two promissory notes which were secured by two deeds of trust. There had been a foreclosure proceeding on the second trust, with a resulting deficiency on the second and third trusts amounting to $5,389.50, as stated in the appellee's declaration. The action was not on the deeds of trust but rather on the obligation contained in the two notes which were secured by the deeds of trust. Appellants have not afforded us with any authority which would persuade us that the appellee, holder of the notes, could not properly proceed in a separate

action on the notes to recover the deficiency remaining after the foreclosure proceedings. It would appear to us that this action on the notes is authorized under the law of the District of Columbia, *Brice v. Walker,* 73 App. D. C. 377, 121 F. 2d 864 (1941), as well as under the law of the State of Maryland.

Maryland Rule W75 b provides that where there has been a sale at a mortgage foreclosure and the net proceeds of the sale are insufficient to pay the mortgage debt and the accrued interest, as found by the court upon the report of the auditor, a motion for a decree *in personam* for the deficiency *may be made.* This is really done as an accommodation to the mortgagee so that he may obtain a deficiency judgment in the same suit without having to institute a separate action. However, there is nothing in this rule to prevent the mortgagee from proceeding by a separate action at law. With regard to a deed of trust, the holder of the note could only proceed to obtain a decree *in personam* for the deficiency in the foreclosure proceedings in the event there was a covenant to pay the obligation in the deed of trust. Maryland Rule W77. However, this would not preclude the holder of the note secured by the deed of trust from proceeding in a separate action at law to obtain judgment for the balance due and owing on the note, together with interest, after a proper credit had been given on the notes of the proceeds realized from the foreclosure proceedings. The important thing is, there can be only one satisfaction of the obligation. In the instant case we are of the opinion that the appellee had the right to bring this action at law for the balance due and owing on the notes, together with interest, in the Circuit Court for Montgomery County.

## VI

We find no merit to the appellants' contention that the appellee was a foreign corporation transacting business in the State of Maryland and accordingly, pursuant to Code (1966 Repl. Vol.) Art. 23, § 91(c), could not maintain this suit because it had not filed a certificate of registration with the State Department of Assessments and Taxation. There was no evidence in the record that the appellant was "doing business" in this State and maintenance of suit itself does not constitute "doing business". *G. E. M., Inc. v. Plough, Inc.,* 228 Md. 484, 180 A. 2d 478 (1962).

## VII

The appellants' contention that the variance between the appellee's declaration, wherein it was designated as a District of Columbia corporation, and the testimony which revealed it to be a Delaware corporation, was fatal, is without substance. The record does reveal that the appellee corporation was entitled to do business in the District of Columbia and was a Delaware corporation. The issue of the status of the appellee was not raised by the appellants in any pleading but was argued by the appellants' counsel at the trial.

Had the issue been properly raised before the Court we are satisfied it would have allowed an amendment of the pleadings to conform with the proof and that it would have been proper for it to do so. Maryland Rule 320.

## VIII

The appellants also assign as error the lower court's refusal to allow them to introduce evidence attacking the fairness of the foreclosure proceedings in the District of Columbia. A reading of the transcript reveals that appellants' counsel questioned Mr. Kas concerning the price for which the property was sold at public auction in the District of Columbia and the price received by the appellee at a subsequent resale. The court sustained the appellee's objection to this line of questioning and the appellants' counsel made no attempt to make a proffer of what he intended to prove by it, as required by Maryland Rule 522 b. Later the appellants in their brief and in argument before this Court contended that the purpose of the line of questioning was to impeach the fairness of the District of Columbia foreclosure sale. The issue thus intended to be raised, even if it has merit and we do not think that it does, is not properly before this Court for review. *Leitch v. Anne Arundel County,* 248 Md. 611, 616, 237 A. 2d 748, 751 (1968).

We are further of the opinion that the court below made the proper allowances for the trustees' fee, water bill and interest and we affirm the judgment in the amount of $4,009.50, with interest from October 11, 1967.

> *Judgment affirmed, appellants to pay costs.*