736 A.2d 450

**Russell GREEN**

v.

**STATE of Maryland.**

**No. 1537, Sept. Term, 1998.**

Court of Special Appeals of Maryland.

Sept. 3, 1999.

760

Martha Weisheit, Assistant Public Defender (Stephen E. Harris, Public Defender on the brief), Baltimore, for appellant.

M. Jennifer Landis, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General and Patricia Jessamy, State's Attorney for Baltimore City on the brief), Baltimore, for appellee.

Argued Before HOLLANDER, BYRNES and MARVIN H. SMITH (Retired, Specially Assigned), JJ.

MARVIN H. SMITH, Judge, Retired, Specially Assigned.

Appellant, Russell Green (Green), was convicted by a Baltimore City jury of second degree murder, use of a handgun in the commission of a felony or crime of violence, and carrying a handgun. His conviction for carrying a handgun was merged and he was sentenced to twenty-five years of imprisonment for murder and twenty-five years concurrent imprisonment for use of a handgun. He raises six issues on appeal:

I. Did the trial court err in admitting "other crimes" evidence?

II. Did the trial court err in refusing to permit appellant to call a witness for the purpose of rehabilitating his credibility when that witness had been present in the courtroom during trial?

III. Did the trial court abuse its discretion in refusing to grant appellant a continuance to obtain evidence that became relevant only at the conclusion of trial?

IV. Did the trial court impose an unreasonable limit on the length of closing argument?

V. Did the reasonable doubt instruction minimize the State's burden of proof?

VI. Did the trial court err in permitting the State, without notice to the defense, to introduce at sentencing evidence of a prior shooting allegedly committed by appellant even though that shooting had not resulted in a conviction?

We shall affirm the judgment of conviction but vacate the sentence. Accordingly, the case will be remanded for a new sentencing proceeding.

We shall set forth such facts as are relevant to each of the issues raised as we discuss those contentions.

## I.

■ Green testified during cross-examination that he had never before been involved in a shooting. The prosecutor began to ask if he knew a certain man. The defense objected. When it became apparent that the State was trying to elicit testimony that Green had been arrested, but not convicted of shooting that man, and that the State's only evidence was police reports, the prosecutor withdrew the question.

A short while later, the prosecutor asked Green a series of questions about why he had not gone to the police with his account of the victim's death. After Green said that he had wanted to go to the police, the following transpired:

[The State] You wanted to but some overwhelming power kept you from sharing your side?

[Appellant] No, I just knew what was going to happen.

Q. It happened to you before?

Green's objection was overruled and the State continued:

Q. Had that happened to you before? How did you know that was going to happen?

A. Yes, I got locked up before.

At that point, the questioning turned to Green's statement to police.

On appeal, Green urges us to connect the question about his knowledge of what would happen if he went to the police and his answer indicating that he had been arrested before with the State's previous attempt to elicit testimony about the shooting in which Green had been arrested but not convicted. He argues that the State was pursuing its initial line of questioning "in an oblique fashion," and that the testimony that Green had been "locked up" improperly established that he had committed other crimes, wrongs, or acts. Md. Rule 5–404(b).

We do not see the State's question as an attempt to introduce evidence it claimed to have abandoned. Instead, the State properly asked Green to explain what he meant when he said that he knew what would happen if he told the police his version of the incident. While that line of questioning could have encouraged Green to recount other instances in which he had been disbelieved by police, it did not necessarily ask about other crimes or bad acts actually committed by him, nor did the admission that he was "locked up" prejudice him. On direct examination Green had testified that he did not go to police after the shooting because he thought they would not understand what happened and would lock him up. In that context, his response to the State's question was an attempt to bolster his position that he had a valid reason for not going to the police.

 The scope of examination of witnesses is a matter left largely to the discretion of the trial court and no error will be recognized in the absence of a clear abuse of discretion. *Conyers v. State,* 354 Md. 132, 729 A.2d 910, 925 (citing *Oken v. State,* 327 Md. 628, 669, 612 A.2d 258, 278 (1992), *cert. denied* 507 U.S. 931, 113 S.Ct. 1312, 122 L.Ed.2d 700 (1993), and *Trimble v. State,* 300 Md. 387, 401, 478 A.2d 1143, 1150 (1984), *cert. denied,* 469 U.S. 1230, 105 S.Ct. 1231, 84 L.Ed.2d 368 (1985)). Here, the trial court permitted the State to ask Green why he believed the police would not credit his version of the shooting. That his answer included a reference to another time when he was "locked up" does not suffice to

establish improper admission of other crimes evidence. There was no abuse of discretion.

## II.

 Green testified in his defense that he had been carrying a gun prior to the shooting because he had been shot five times in a previous incident and "was scared that somebody was trying to take [his] life again." On cross-examination the State asked him whether he ended up in the hospital on that occasion, to which an affirmative response was given. He was then asked whether the hospital records were present in court. He said that they were not. Green said he had been in the hospital about a week, that he was shot twice in his leg and once in his arm, and that he had no idea who did it. Defense counsel brought out on redirect that Green did not have the medical records because he "didn't have no means of calling the people to let them know to bring [his] medical records down or give them to [him] or mail them to [him]." The issue was revisited on recross-examination.

Green alleges in his brief, "Because the prosecutor had made an issue of the Appellant's failure to introduce medical records corroborating his testimony, defense counsel requested the court's permission to call [as] a witness on that issue the Appellant's girlfriend, who had been sitting in the courtroom during the trial."

After the defense request the record then is:

[STATE] I would object to the girlfriend, Your Honor. The issue isn't whether or not he was shot. He's shown his scars, that's not the question. It's how badly he was injured, and she cannot testify to whether or not it was life threatening.

[THE COURT] Well, she's been in the courtroom. She's been educated as to what the issue is. I understand that you didn't anticipate this, but even so, I think on balance I sustain the objection to calling her.

[DEFENSE COUNSEL] Well, I anticipate I probably will have to try to scout up some additional witnesses tonight to

come in and to testify as to how long he was in Shock Trauma and how long he was in University and what his condition was since this has all now been introduced into the case for some reason.

Green assigns as error the failure to permit the testimony of the girlfriend.

█ There was no formal proffer of what the witness would say other than the statement that we have quoted to the effect that she could testify how long he was in Shock Trauma, how long he was in University Hospital, and his condition since the time of those hospitalizations. We note that in *Mack v. State,* 300 Md. 583, 603, 479 A.2d 1344 (1984), the Court of Appeals said, "[T]he question of whether the exclusion of evidence is erroneous and constitutes prejudicial error is not properly preserved for appellate review unless there has been a formal proffer of what the contents and relevance of the excluded evidence would have been." (citing *Hooton v. Kenneth B. Mumaw Plumbing & Heating Co.,* 271 Md. 565, 571, 318 A.2d 514, 517 (1974); *Keys v. Keys,* 251 Md. 247, 250, 247 A.2d 282, 284 (1968); *Katz v. Simcha Co., Inc.* 251 Md. 227, 239, 246 A.2d 555, 562 (1968); *Fowler v. Benton,* 229 Md. 571, 575, 185 A.2d 344, 347 (1962); and Maryland Rule 3–517(c) (formerly Maryland Rule 522(b))). We note that even in his brief Green fails to set forth what his girlfriend's testimony would have been.

█ In this case Green was permitted to demonstrate his wounds to the jury. In a different context—the issue of whether there was sufficient evidence to generate a self-defense instruction in a homicide prosecution—the Court of Appeals has indicated that the defendant's own testimony that he had a subjective perception of the need to defend himself generates the instruction "though it may be difficult to accept. . . ." *Dykes v. State,* 319 Md. 206, 222, 571 A.2d 1251 (1990). That is not exactly our situation, even though self-defense instructions were given. Green's goal was to persuade the jury that he carried the gun because he had a subjective fear of danger from somebody, if not specifically

from his victim. If his own testimony would have been sufficient to generate an instruction on self-defense, then, in this case, he did not have to introduce further corroboration of his claim that he had been shot. Accordingly, even if there had been a proffer that the girlfriend would have testified that he had been shot, that evidence essentially would have been just more corroboration.

The decision to permit Green's girlfriend to sit through trial rather than to be sequestered can be seen as one of strategy. Defense counsel had to decide whether this potential witness was sufficiently valuable to corroborate that one point, thus requiring her to be sequestered in case the need arose for her testimony.

We believe the issue was not properly preserved, but, if it had been, the court's ruling was correct. The State did not contest the fact that Green had been shot. He had shown his wounds to the jury. We find no error.

### III.

■ Defense counsel sought a continuance so that he might subpoena Green's medical records from Shock Trauma. The trial judge said:

"If you can get them here in the morning, the case will still be open. If you can't get them here in the morning, then the case isn't open or won't be open, but we're not going to hold it open for that."

The following day Green's attorney informed the court that hospital personnel had advised him it would take at least 48 hours to produce the medical records. A continuance was requested until the following Tuesday in order to obtain the records. This motion was denied. Its denial constitutes the third contention presented on behalf of Green.

■ We bear in mind that in *Wilson v. State*, 345 Md. 437, 693 A.2d 344, 351 (1997), the Court said:

[T]he decision to grant a continuance ... affects the convenience of the court, the jury, the prosecution, other wit-

nesses, and possibly other cases scheduled for trial. Accordingly, the trial court is vested with a significant amount of discretion whether to grant the necessary continuance to allow [a] missing witness to be located, subpoenaed, or apprehended, and reversal of a judgment of conviction is appropriate only upon a finding that that discretion has been abused.

*Id.* at 451, 693 A.2d at 350. *See also State v. Brown,* 342 Md. 404, 420, 676 A.2d 513 (1996) (pertaining to a decision to permit discharge of counsel after trial has begun).

We accept the contention of the State that there was no implication by it to the effect that the prior shooting was a fabrication and its further contention that as a consequence there was no need to refute the fact for fabrication. The State contends that it "merely sought to cast doubt on Green's claim that the severity of his wounds led him to carry a gun, and that, at the time of Giles's murder, he was fearful of another life threatening attack." We note that in closing argument defense counsel told the jury, "[T]he reason why those records aren't here is because I, as Mr. Green's attorney, did not think there was any reason to ask for those records to be here because I didn't think it had anything to do with this case." We conclude that the trial judge did not abuse his discretion in denying the continuance. If there were error, we hold it to have been harmless error beyond a reasonable doubt. *See Dorsey v. State,* 276 Md. 638, 350 A.2d 665 (1976).

## IV.

The trial judge limited closing argument to 30 minutes per side. He initially had said he would permit but 20 minutes for each side. When the State asked for 30 minutes per side, the judge said, "I think it's clearly excessive. 30 minutes each side. The facts are simple. The issue, as I see it, is fairly clear-cut. It's just a question of 10 minutes on reasonable doubt is beyond the pale. Thirty minutes each side."

▉▉▉▉ Green assigns error contending that this limit was unreasonable and deprived defense counsel of a full opportunity to argue some of the most important issues in the case. He cites in support of his argument *Yopps v. State,* 228 Md. 204, 178 A.2d 879 (1962). We point out that in that case Judge Charles C. Marbury said for the Court:

> The Court may in its discretion limit the time to be consumed by counsel in argument, and the only restriction is that reasonable time for argument must be allowed counsel. What constitutes reasonable time depends on the circumstances of each case and is within the trial court's discretion. This discretion is not ordinarily subject to review by an appellate court unless the time allowed is plainly arbitrary and amounts to an abuse of discretion. *Comi v. State,* 202 Md. 472, 97 A.2d 129; 3 Am.Jur., *Appeal and Error, §* 973; 53 Am.Jur., *Trial, §* 461; *cf. Shedlock v. Marshall,* 186 Md. 218, 225, 46 A.2d 349.

*Id.* at 207, 178 A.2d at 881.

It is true that the charge here was first degree murder. However, the State's case was not complex. It consisted of only five witnesses. Green did not dispute that he shot Giles several times. He claimed only that he acted in self-defense. Thus, the only issue to resolve was whether Green committed first degree murder by acting with premeditation and deliberation, second degree murder by killing intentionally without excuse, justification, or mitigation, or whether he acted in self-defense.

▉▉▉▉ We point out that defense counsel voiced no objection to this 30–minute limit. Both the Court of Appeals and this Court have held that when a party acquiesces in the court's ruling, there is no basis to appeal from that ruling. *See, e.g., Watkins v. State,* 328 Md. 95, 99–100, 613 A.2d 379 (1992); *Icgoren v. State,* 103 Md.App. 407, 438, 653 A.2d 972, *cert. denied,* 339 Md. 167, 661 A.2d 700 (1995). Green's attorney accepted the compromise offered by the court. There having been no objection by the defense to the limitation on the time of argument, there is no basis to complain that the court's

ruling was erroneous. Moreover, we perceive no abuse of discretion on the part of the trial judge.

## V.

■■ Green contends that a part of the initial instruction given by the trial judge relative to reasonable doubt "was confusing and misleading." He notes, however, that "the judge concluded with a correct instruction...." Because trial counsel took no exception to the jury instruction as he should have done, if he believed it to be an erroneous instruction, Green asks us to take cognizance of plain error under Maryland Rule 4–325(e).

■■ We point out that in *Butler v. State*, 335 Md. 238, 261, 643 A.2d 389 (1994), the Court of Appeals said, "[J]ury instructions should be considered as a whole without undue emphasis on minor ambiguities or minor inconsistencies." In this case the court instructed the jury:

Do not assume that the defendant is guilty merely because he is being prosecuted and because charges have been preferred against him. The burden is on the State to prove every element of the crimes charged, and the defendant is presumed guilty until proven—presumed innocent until—excuse me, that was a pure slip of the tongue. The defendant is presumed to be innocent until proved guilty beyond a reasonable doubt.

That presumption stays with him throughout the trial unless or until overcome by evidence showing his guilt beyond a reasonable doubt.

Now that does not mean beyond all doubt. The State need not prove guilt to an absolute or mathematical certainty. *What it means is such evidence that you would act upon in matters involving important affairs in your own lives with respect to your own business or your own property.*

*If the evidence is such that you would act upon it in a very important matter in your own life, then it is enough to convict in a criminal case.* Evidence is sufficient to remove a reasonable doubt when it convinces the judgment of an

ordinarily prudent person of the truth of the proposition with such force that he would act upon that conviction without reservation in his or her own important affairs. In deciding whether the State has met the burden of proof, you should consider the quality of all of the evidence, regardless of who called the witness or who introduced the exhibit, and regardless of the number of witnesses which one party or the other party may have called.

 It is the italicized portion of the instruction that Green labels as "confusing and misleading." We just do not agree with this characterization. We find no error. Nevertheless, we say for the benefit of trial judges generally that the wise course of action is to give instructions in the form, where applicable, of our Maryland Pattern Jury Instructions. Those instructions have been put together by a group of distinguished judges and lawyers who almost amount to a "Who's Who" of the Maryland Bench and Bar. Many of these instructions have been passed upon by our appellate courts.

## VI.

 When this case was called for sentencing Green's counsel said:

> Your Honor, I do have one thing preliminarily.... Your Honor, it's my understanding, I found out this morning much to my surprise, that the State has brought into the courtroom and intends to have testify in this case an individual who was a complainant in two shooting cases apparently, with which my client was charged at some point in the past. Apparently those cases were dismissed. Apparently the State intends to put this individual on the stand to talk about this other totally unrelated case. I would object to that. I certainly am in no position to try to meet this kind of evidence today. I know nothing about those cases and I believe in any event, they are totally irrelevant to this case and I would object to the introduction of bad conduct evidence involving crimes with which my client was charged and not convicted.

The trial judge inquired, "What in the law or the rules requires the State to disclose in advance of hearing on disposition the evidence it proposes to present or it intends to present?" Defense counsel indicated that he did not know, but that he "d[id] know that under the Federal Rules of Evidence, if the State intends to introduce other crimes evidence at a trial [sic], the State is required to disclose that in sufficient time to give the Defendant an opportunity to meet that evidence." He said he did not recall whether there was a State rule on the subject.

The State called two witnesses. The first was Ernest Mack. He testified to an incident on August 27, 1996, when he was shot in the chest. He failed, however, to identify Green as the shooter.

The State then called Detective Frank Zapchek who identified himself as of the "Violent Crimes Task Force Shooting Investigations." He testified to an incident involving Ernest Mack. He indicated that Mack identified Russell Green as the person who shot him on August 27, 1996, this identification having been from a photographic array.

Green now points to Maryland Rule 4-342(d), which provides:

(d) *Presentence disclosures by the State's Attorney.*—The State's Attorney shall disclose to the defendant or counsel any information which the State expects to present to the court for consideration and sentencing within sufficient time before sentencing to afford the defendant a reasonable opportunity to investigate the information. If the court finds that the information was not timely provided, the court shall postpone sentencing.

Green argues, "Because the evidence introduced at the sentencing hearing violated the express provisions of the above rule as well as principles of fundamental fairness, it was error for the judge to admit it."

The State points out that on the issue of notice it responded to Green's objections by stating at sentencing:

Your Honor, the gentleman that the State intends to call, the first witness is Mr. Mack. I asked the question during the trial, is the Defendant familiar with Mr. Mack. There was an objection to that question and at that time I proffered at the bench that Mr. Mack was a person who had been shot on two separate occasions and who had identified the defendant as the person who had shot him. However, at that time, of course, I didn't have Mr. Mack present and therefore I was not in a position to defend my proffer so I withdrew my question. But this is the same person who was referred to during trial as a person who had been shot on two separate occasions by the Defendant and I believe that, at that point, the Defense was on notice that the State was aware of an incident wherein the Defendant shot a single man on two separate occasions.

The State argues that "although the State only gave notice of a matter of minutes, Green was aware of the State's knowledge of the prior shootings." It further points out that at sentencing the trial judge said, "Weighing in this Defendant's favor is the total absence of prior criminal record, although I heard evidence of another shooting...."

We have not the faintest idea what investigation of Mack by defense counsel might have revealed. Without the notice mandated by the rule there was no reason to investigate Mack. Investigation might have revealed him to be a pathological liar. It could have shown that he had been convicted of perjury and thus he would not be permitted to testify. The investigation might have revealed that the appellant Green was not in the State when the earlier incident allegedly occurred. It might have disclosed that Green was incarcerated or hospitalized somewhere at the time of the alleged earlier incident and thus could not have been involved. It might have revealed that Mack had made statements to the effect that he had made up the whole scenario.

The word "shall" in the rule means that it was mandatory that the State disclose "any evidence ... [it] expect[ed] to present," not merely identification of those whom

it might call to testify. The rule's purpose here could not be carried out absent the required notice to defense counsel. In his inimitable style Judge McWilliams said for the Court in *Isen v. Phoenix Assurance Company of New York*, 259 Md. 564, 570, 270 A.2d 476 (1970), that the Maryland Rules "are not guides to the practice of law but precise rubrics 'established to promote the orderly and efficient administration of justice and [that they] are to be read and followed,'" (citing *Brown v. Fraley*, 222 Md. 480, 483, 161 A.2d 128, 130 (1960)).

We hold that by reason of the noncompliance with the rule this sentence must be vacated and the case remanded for a re-sentencing.

**JUDGMENT OF CONVICTION AFFIRMED; SENTENCE VACATED AND CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE EQUALLY DIVIDED BETWEEN THE APPELLANT AND MAYOR AND CITY COUNCIL OF BALTIMORE.**